### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**ISRAEL MENDOZA,**

      **Petitioner,**

**v.**                             **Case No. 8:25-cv-1054-MSS-LSG**

**SECRETARY, DEPARTMENT**
**OF CORRECTIONS,**

      **Respondent.**

_____/

### O R D E R

Mendoza filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his state court convictions for conspiracy to traffic cocaine and money laundering. (Doc. 1) After reviewing the response (Doc. 13), the reply (Doc. 15), and the relevant state court record (Doc. 14), the Court **DISMISSES** the petition as untimely.

### PROCEDURAL HISTORY

Mendoza pleaded guilty to conspiracy to traffic cocaine and money laundering, and the trial judge sentenced Mendoza to ten years in prison for the cocaine trafficking conspiracy conviction and five years in prison for the money laundering conviction. (Doc. 14-2 at 58–65) The judgment and sentences entered on March 25, 2022 (Doc. 14-2 at 58), and Mendoza did not appeal.

On March 28, 2024, Mendoza filed a motion for post-conviction relief. (Doc. 14-2 at 82–97) On April 23, 2024, the post-conviction court denied relief (Doc. 14-2 at 98–100), Mendoza appealed, and the state appellate court dismissed Mendoza's appeal because he untimely filed a notice of appeal. (Doc. 14-2 at 130)

Mendoza's federal petition followed. In his petition, Mendoza asserts that police arrested him and conducted a search with a defective warrant, the trial judge violated his Fourth Amendment rights by denying a motion to suppress his statements recorded by a confidential informant, and the trial judge violated his federal right to due process by accepting his guilty plea without a factual basis. (Doc. 1 at 6–9)

## ANALYSIS

A one-year statute of limitation applies to a federal habeas petition challenging a state court judgment. 28 U.S.C. § 2244(d)(1). The limitation period begins to run "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

The judgment entered on March 25, 2022. (Doc. 14-2 at 58) Fla. R. App. P. 9.020 (explaining that rendition of a judgment occurs "when a signed, written order is filed with the clerk of the lower tribunal"). Mendoza did not appeal, and the time to appeal expired thirty days after rendition of the judgment — April 25, 2022.[1]

---

[1] Because thirty days after the rendition of the judgment was Sunday, April 24, 2022, the time to appeal extended to Monday, April 25, 2022. Fla. R. Jud. Admin. 2.514(a)(1)(C).

Fla. R. App. P. 9.140(b)(3). Consequently, the limitation started to run the next day. Fed. R. Civ. P. 6(a)(1)(A). *Bridges v. Johnson*, 284 F.3d 1201, 1202 (11th Cir. 2002).

The limitation period ran for a year and expired on April 26, 2023. Because Mendoza filed his Section 2254 petition almost two years later, on March 12, 2025 (Doc. 1 at 16), the petition is untimely. *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001) ("Absent evidence to the contrary in the form of prison logs or other records, we will assume that Washington's motion was delivered to prison authorities the day he signed it . . . .").

"[A] properly filed application for State post-conviction or other collateral review" tolls the limitation. 28 U.S.C. § 2244(d)(2). On March 28, 2024, almost a year after the limitation period expired, Mendoza placed in the hands of prison officials for mailing a motion for post-conviction relief. (Doc. 14-2 at 82–97) *Haag v. State*, 591 So. 2d 614, 617 (Fla. 1992). Because Mendoza filed his post-conviction motion after the limitation period expired, the motion did not toll the limitation. *Sibley v. Culliver*, 377 F.3d 1196, 1204 (11th Cir. 2004) ("[O]nce a deadline has expired, there is nothing left to toll. A state court filing after the federal habeas filing deadline does not revive it.").

Mendoza contends that his petition is timely because (Doc. 1 at 14–15):

> In order to exhaust my claims through all remedies provided through the State, it took time and consistent effort researching, writing, and filing. I have followed all state procedural rules seeking justice through the provided remedies. I have not prevailed and now seek justice from a higher court. There is a clear showing of evidence that there has been a constitutional error, and I am imprisoned in violation of the Constitution. The facts presented in my case show the conception of federal [and] state relations that

> undervalued procedural rules and Constitutional rights.
> A result of the alleged violation of federal law is
> fundamental, and the failure to consider these claims will
> result in a miscarriage of justice.

In his reply, Mendoza further asserts that the one-year federal limitation that applies to a Section 2254 petition violates the Suspension Clause of the United States Constitution, that the limitation equitably tolled, and that actual innocence excuses the time bar. (Doc. 15)

**Suspension Clause**

Mendoza asserts that the one-year federal limitation that applies to a Section 2254 petition violates the Suspension Clause of the United States Constitution. (Doc. 15 at 3–7) He contends that the federal limitation suspends the writ by categorically barring an untimely claim, despite any diligence by the petitioner or the merit of the claim. (Doc. 15 at 4) He further contends that the federal limitation suspends the writ by requiring a petitioner to exhaust his remedies in state court within one year, even though state procedural rules provide a defendant two years to seek relief in state court. (Doc. 15 at 5)

As Mendoza acknowledges (Doc. 15 at 6), *Wyzykowski v. Dep't Corrs.*, 226 F.3d 1213, 1217 (11th Cir. 2000), concluded that "as a general matter, the Section 2244(d) limitation period does not render the collateral relief ineffective or inadequate to test the legality of detention, and therefore is not an unconstitutional suspension of the writ of habeas corpus."

Also, *Tinker v. Moore*, 255 F.3d 1331, 1334–35 (11th Cir. 2001) (omitting footnotes three and four), rejected the argument that Section 2244(d) violated the Suspension Clause:

> Alternatively, Tinker argues that if his claim is time barred, Section 2244(d) is unconstitutional as applied to him because it violates the Suspension Clause, U.S. Const. art. I, § 9, cl. 2., and forces him to choose between exercising his right to meaningful access to the state courts which provide a two-year limitation period and the right to petition for federal habeas relief.
>
> We find no merit in Tinker's argument. In *Wyzykowski v. Dep't Corrs.*, 226 F.3d 1213 (11th Cir. 2000), we said that "as a general matter, the Section 2244(d) limitation period does not render the collateral relief ineffective or inadequate to test the legality of detention, and therefore is not an unconstitutional suspension of the writ of habeas corpus." *Id.* at 1217.[2] Thus, "Section 2244(d) does not *per se* constitute an unconstitutional suspension" of the writ. *Id. See also Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 113 (2d Cir. 2000); *Molo v. Johnson*, 207 F.3d 773, 775 (5th Cir. 2000) (*per curiam*); *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998). Moreover, the availability of equitable tolling in cases "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence," *Steed*, 219 F.3d at 1300 (quotation and citation omitted), ensures that Section 2244's limitation is constitutionally applied, as it was here.
>
> > [2] The Suspension Clause provides: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. Despite this restriction, the Supreme Court has held that "judgments about the proper scope of the writ are 'normally for Congress to make.'" *Felker v. Turpin*, 518 U.S. 651, 664 (1996)

(quoting *Lonchar v. Thomas*, 517 U.S. 314, 323 (1996)). In *Swain v. Pressley*, 430 U.S. 372 (1977), the Supreme Court held that "the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus." *Id.* at 381.

Further, we reject Tinker's "impermissible choice" argument. By virtue of statute, Tinker is provided both a state and federal forum in which to seek post-conviction relief. Despite his argument to the contrary, he need not forego his state remedy entirely in order to avail himself of the federal remedy. However, he must exercise it within one year of the date his judgment became final and do so in a manner that leaves him sufficient time to timely file his federal petition.

However, Mendoza argues that *Boumediene v. Bush*, 553 U.S. 723 (2008), holds that any substitute for habeas relief must provide an adequate and effective remedy and that a restriction that denies meaningful review violates the Suspension Clause. (Doc. 15 at 3–4) Mendoza's reliance on *Boumediene* is misplaced.

In *Boumediene*, 553 U.S. at 732–35, the petitioners, who were enemy combatants detained at the United States Naval Station at Guantanamo Bay, Cuba, challenged a statute that prohibited an enemy combatant from seeking habeas relief. *Boumediene*, 553 U.S. at 771, 792, held that the statute that prohibited an enemy combatant from seeking habeas relief suspended the writ of habeas corpus and that a military tribunal created to provide an enemy combatant due process was an inadequate substitute for habeas relief.

*Boumediene*, 553 U.S. at 782–83, distinguished between detention authorized by

a judgment in a criminal case and detention authorized by an executive order:

> Accordingly, where relief is sought from a sentence that resulted from the judgment of a court of record, as was the case in *Watkins* and indeed in most federal habeas cases, considerable deference is owed to the court that ordered confinement. *See Brown v. Allen*, 344 U.S. 443 (1953) (opinion of Frankfurter, J.) (noting that a federal habeas court should accept a state court's factual findings unless "a vital flaw be found in the process of ascertaining such facts in the State court"). Likewise in those cases the prisoner should exhaust adequate alternative remedies before filing for the writ in federal court. *See Ex parte Royall*, 117 U.S. 241, 251–252 (1886) (requiring exhaustion of state collateral processes). Both aspects of federal habeas corpus review are justified because it can be assumed that, in the usual course, a court of record provides defendants with a fair, adversary proceeding. In cases involving state convictions this framework also respects federalism; and in federal cases it has added justification because the prisoner already has had a chance to seek review of his conviction in a federal forum through a direct appeal. The present cases fall outside these categories, however; for here the detention is by executive order.
>
> Where a person is detained by executive order, rather than, say, after being tried and convicted in a court, the need for collateral review is most pressing. A criminal conviction in the usual course occurs after a judicial hearing before a tribunal disinterested in the outcome and committed to procedures designed to ensure its own independence. These dynamics are not inherent in executive detention orders or executive review procedures. In this context the need for habeas corpus is more urgent. The intended duration of the detention and the reasons for it bear upon the precise scope of the inquiry. Habeas corpus proceedings need not resemble a criminal trial, even when the detention is by executive order. But the writ must be effective. The habeas court must have sufficient authority to conduct a meaningful review of both the cause for detention and the Executive's power to detain.

Because Mendoza challenges his detention authorized by a judgment in a state criminal case, *Boumediene* does not entitle Mendoza to relief.

Even though Section 2254(b) requires Mendoza to exhaust his remedies in state court, Section 2244(d)(2) tolls the federal limitation while a properly filed post-conviction motion and post-conviction appeal are pending. *Nyland v. Moore*, 216 F.3d 1264, 1267 (11th Cir. 2000). Even if Mendoza fails to timely file a federal petition, he may argue either that the limitation equitably tolled or that actual innocence excuses the time bar. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); *Holland v. Florida*, 560 U.S. 631, 645 (2010).

Because Congress has the authority to narrow the scope of the writ of habeas corpus by enacting the one-year limitation and because statutory tolling under Section 2244(d)(2), equitable tolling, and actual innocence ensure that the remedy is both adequate and effective, Mendoza's claim based on the Suspension Clause is meritless. *See Evans v. Thompson*, 518 F.3d 1, 12 (1st Cir. 2008) ("Just as Congress can expand the availability of habeas relief, so can it add some restrictions to the issuance of the writ without effectuating its suspension. . . . AEDPA falls on the permissible restriction side of the Suspension Clause line."). *Delaney v. Matesanz*, 264 F.3d 7, 13 (1st Cir. 2001) ("[T]he one-year limitation period of section 2244(d)(1), as embellished by the tolling provision of section 2244(d)(2), does not suspend the writ because, when read in tandem, these provisions neither gut the writ of habeas corpus nor render it impuissant to test the legality of a prisoner's detention. Tolling the limitation period during the

pendency of state post-conviction proceedings leaves habeas petitioners with a reasonable opportunity to have their claims heard on the merits.") (citations omitted).

**Equitable Tolling**

Mendoza asserts that "[t]he conflicting time frames — Florida's two-year Rule 3850 window versus AEDPA's one-year [window] — constitute an extraordinary circumstance" that justifies equitable tolling. (Doc. 15 at 7–8) He contends that a diligent Florida prisoner who files a timely Rule 3.850 motion becomes "trapped" by missing the deadline for a Section 2254 petition. (Doc. 15 at 7–8)

Equitable tolling applies to a Section 2254 petition and requires the petitioner to demonstrate "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

The two-year limitation under Rule 3.850 and the one-year federal limitation under Section 2244(d) apply to all state prisoners in Florida. "*[P]ro se* litigants, like all others, are deemed to know of the one-year statute of limitations." *Outler v. United States*, 485 F.3d 1273, 1282 n.4 (11th Cir. 2007). *Felder v. Johnson*, 204 F.3d 168, 172 (5th Cir. 2000) ("[M]ere ignorance of the law or lack of knowledge of filing deadlines does not justify equitable tolling or other exceptions to a law's requirements.").

Mendoza's confusion about the difference between the two-year limitation under Rule 3.850 and the one-year limitation under Section 2244(d) is not an extraordinary circumstance that prevented him from timely filing a Section 2254 petition. *Johnson v. Fla. Dep't Corrs.*, 513 F.3d 1328, 1333 (11th Cir. 2008) ("[F]ederal

habeas petitioners who rely upon the timeliness of state post-conviction proceedings to satisfy the requirements of AEDPA do so at their peril."); *Cole v. Warden, Ga. State Prison*, 768 F.3d 1150, 1158 (11th Cir. 2014) ("Determining whether a factual circumstance is extraordinary to satisfy equitable tolling depends not on 'how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period.'") (citation omitted); *San Martin v. McNeil*, 633 F.3d 1257, 1267 (11th Cir. 2011) ("As for the 'extraordinary circumstance' prong, like the Supreme Court's articulation in *Holland*, we too have required a defendant to show a causal connection between the alleged extraordinary circumstances and the late filing of the petition.").

Also, on April 26, 2023, the limitation period expired. On July 15, 2024, the state appellate court dismissed as untimely Mendoza's appeal of the order denying post-conviction relief. (Doc. 14-2 at 130) Almost eight months later, on March 12, 2025, Mendoza filed his Section 2254 petition. (Doc. 1 at 16) Because Mendoza did not diligently seek federal habeas relief, the federal limitation did not equitably toll. *Pace*, 544 U.S. at 419 ("And not only did petitioner sit on his rights for years *before* he filed his [state post-conviction] petition, but he also sat on them for five more months *after* his [state post-conviction] proceedings became final before deciding to seek relief in federal court. Under long-established principles, petitioner's lack of diligence precludes equity's operation.") (italics in original and citations omitted); *Melson v. Comm'r, Ala. Dep't Corrs.*, 713 F.3d 1086, 1089 (11th Cir. 2013) ("While a petitioner is

only required to exercise 'reasonable diligence,' not 'maximum feasible diligence,' Melson took no independent steps to ensure that his federal habeas petition was timely filed.") (citation omitted).

### Miscarriage of Justice

To obtain relief based on a miscarriage of justice, Mendoza must demonstrate actual innocence. *McQuiggin*, 569 U.S. at 392. "[T]enable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 569 U.S. at 386 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). "To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324.

Mendoza fails to submit any new reliable evidence that demonstrates his actual innocence. He instead contends that unreliable and unproven allegations supported the factual basis for his guilty plea. (Docs. 1 at 9 and 15 at 8–9)

An affidavit by an agent with the Drug Enforcement Administration demonstrated a factual basis for Mendoza's guilty plea (Doc. 14-2 at 9–13):

> Since August 2015, the DEA Tampa District Office, the Manatee County Sheriff's Office, [the] Sarasota County Sheriff's Office, and [the] Bradenton Police Department, hereinafter referred to as Investigating Agency, have been investigating a drug trafficking organization operating

11

throughout Manatee and Sarasota Counties. The investigation identified that Israel Mendoza was responsible for acquiring narcotics outside the State of Florida, then distributing those narcotics throughout Manatee and Sarasota Counties.

Most recently, Israel Mendoza obtained a supply of cocaine in Houston, Texas, which he ultimately planned to distribute throughout Manatee and Sarasota Counties. This was supported by lawfully recorded communications in conjunction with physical and electronic surveillance, and lawful stops that led to [a] seizure of cocaine from Israel Mendoza and Norma Mendoza.

In February of 2017, a confidential source of the DEA reported to your affiant that Israel Mendoza intended on acquiring a supply of cocaine from Texas. During this time, the CS met with Israel Mendoza in Sarasota County, Florida. The CS recorded the meeting; your affiant has reviewed the recording. During the meeting, Israel Mendoza informed the CS that the cocaine was in Houston, Texas and he intended on picking up "five." The CS told your affiant that he [or] she knows "five" to be in reference to five kilograms of cocaine. Throughout the meeting, Israel Mendoza directed the CS to rent a vehicle for travel to Houston, Texas, and return to Florida with the cocaine.

In March 2017, the CS met with Israel Mendoza in Manatee County, Florida. During the meeting, Israel Mendoza provided the CS with $580.00. The CS advised the funds were to be used for expenses incurred for travel to Houston, Texas.

Throughout March 3, 2017, the CS was in [a] recorded conversation with Israel Mendoza reference the pending cocaine transaction. Also, on March 3, 2017, the CS recorded a conversation between Israel Mendoza and Norma Mendoza. The conversation was in the Spanish language and summarized by a Spanish speaking law enforcement agent. Throughout the conversation, Norma and Israel Mendoza discussed the arrangements concerning the transport of the cocaine they were expecting. Norma Mendoza conveyed to Israel Mendoza that she had a

conversation with her contact and that she commented, "How is that kid going to hide that?" Your affiant believes that Norma Mendoza is referring to the CS as "kid." In regards to "[ ] hide that," your affiant believes that Norma Mendoza asked Israel Mendoza how the CS would conceal the cocaine. Norma Mendoza also mentioned she explained to her contact that he [or] she (the CS) will have to accommodate [and] hide that (cocaine) in a good manner. Israel Mendoza commented to Norma Mendoza, "What about if I ask them to bring it to a hotel?" Norma Mendoza stated to Israel Mendoza that she will tell her contacts that they should rent a hotel room; Israel Mendoza commented that they (Israel and Norma Mendoza) will rent the hotel room. Norma Mendoza immediately asked, "Why us?" (referring to the room rental). Norma Mendoza then told Israel Mendoza that they should rent an inexpensive room.

Israel Mendoza suggested that they should rent a room nearby and then he commented to Norma Mendoza, "Why the fuck are we going to transport that (cocaine), they should take that (cocaine) over there to the room at the hotel and we will move over there, [ ][1], we get to the room and they bring it (cocaine) to us over there so that we don't have to take it to the hotel."

> [1] Your affiant has removed the name of the CS from this statement by Israel Mendoza to protect the identity of the CS.

Furthermore, Norma and Israel Mendoza discussed their displeasure as to how the arrangements were made by their source of supply. Israel Mendoza asked Norma Mendoza to give him the phone so that he could call "Huero" to explain to him how unhappy he was with the arrangements. During this exchange [ ], Norma Mendoza explained to Israel Mendoza that we cannot go and open these things (referring to the cocaine). Norma Mendoza further stated that she is going to give them (her contacts) the address so that they can come over (referring to the hotel) and that it would be better if he [or] she (the CS) rented the hotel room near a highway exit.

Subsequently, Israel Mendoza told the CS that he intended on acquiring the supply of cocaine, which was to occur in the parking lot of an Academy Sports in Houston, Texas. On this date, law enforcement conducted physical surveillance of Israel Mendoza, and his wife Norma Mendoza. Surveillance observed the Mendozas arrive in the Academy Sports parking lot. They parked and exited their vehicle, a 2008 Dodge Caravan displaying Florida license plate 777QJT. Surveillance watched both Israel and Norma Mendoza enter the Academy Sports business. A short time later, Norma Mendoza was observed exiting the store with Veronica Soto[2]. Soto was observed removing a bag from a vehicle parked next to Norma Mendoza's van. Soto then entered Norma Mendoza's van with the bag. A short time later Soto exited the van and returned to her vehicle. Norma Mendoza exited a parking space and drove the van to the front entrance of the store. Israel Mendoza then exited the store along with Jaime Soto Vaca. Israel Mendoza entered the front passenger seat of the van. Norma and Israel Mendoza then departed the parking lot.

> [2] Veronica Soto was subsequently identified during a traffic stop.

After the aforementioned meeting, Israel Mendoza contacted the CS and notified him [or] her, "I already got the family and everything." The CS told your affiant that "got the family" is in reference to receiving the cocaine. Surveillance was maintained on Norma and Israel Mendoza's van. Harris County Sheriff's Office (Houston, Texas) subsequently made contact with Norma and Israel Mendoza in a business parking lot, located in Houston, Texas.

During the contact, a drug alerting canine was deployed on van; the canine alerted to the presence of narcotics. A search of the vehicle yielded [ ] the seizure of approximately 4.664 kilograms of cocaine. The cocaine was later field-tested by law enforcement and [was] positive [for] the presence of cocaine.

Your affiant and Task Force Officer Jonathan Sandel interviewed Israel Mendoza later [on] this date. During the

14

post-*Miranda* interview, Mendoza advised his wife did not know what was going on. TFO Sandel explained to Mendoza if she (Norma Mendoza) assisted in any way, she was involved in the cocaine transaction. When asked again who[m] he (Mendoza) obtained the cocaine from, Mendoza stated Veronica Soto.

Your affiant has not included every detail known to your affiant, but merely enough information to establish probable cause.

In conclusion, your affiant believes there is probable cause, and does believe, that Israel and Norma Mendoza conspired with each other and others to bring into the State of Florida a quantity of cocaine in excess of four-hundred grams, and that an overt act furthering the conspiracy occurred in Manatee County, Florida. Furthermore, your affiant believes there is probable cause, and does believe, that Israel Mendoza transported funds exceeding $300.00 with the intent to promote [a] specified unlawful activity (trafficking in cocaine).

"'A conspiracy is an express or implied agreement or understanding between two or more persons to commit a criminal offense.'" *Gould v. State*, 251 So. 3d 1034, 1036 (Fla. 5th DCA 2018) (citation omitted). "'To prove the crime of conspiracy, the state must prove an agreement and an intention to commit an offense.'" *Gould*, 251 So. 3d at 1036 (citation omitted). Statements in the affidavit demonstrate that Israel and Norma Mendoza agreed to purchase cocaine from Veronica Soto and intended to commit the offense by hiring the confidential informant to assist with the drug transaction and by traveling to Texas and purchasing from Soto almost five kilograms of cocaine. Consequently, the affidavit demonstrates that Mendoza engaged in a conspiracy to traffic cocaine. *Green v. State*, 999 So. 2d 1098, 1099–1100 (Fla. 5th DCA 2009) ("The jury could reasonably have inferred that Gibson conspired with Green to

15

purchase cocaine based on the evidence that they travelled together from Pennsylvania to Orlando for a short visit, that they met the purported seller at a prearranged meeting, that they were both present throughout the negotiations, that Green indicated that 'they' were there to purchase cocaine, and that they walked together back to their hotel room to retrieve the money necessary to purchase the cocaine.").

Section 896.101(3)(b)(1), Florida Statutes, criminalizes promotional money laundering as follows:  "It is unlawful for a person [t]o transport or attempt to transport a monetary instrument or funds [w]ith the intent to promote the carrying on of specified unlawful activity." A specified unlawful activity includes drug trafficking. §§ 895.02(8)(a)(49) and 896.101(2)(h), Fla. Stat. Statements in the affidavit demonstrate that Mendoza transported money from Florida to Texas to purchase the cocaine. Consequently, the affidavit demonstrates that Mendoza engaged in money laundering. *See, e.g.*, *United States v. Piervinanzi*, 23 F.3d 670, 680 (2d Cir. 1994) ("Section 1956(a)(2) contains no requirement that 'proceeds' first be generated by unlawful activity, followed by a financial transaction with those proceeds, for criminal liability to attach. Instead, it penalizes an overseas transfer 'with the intent to promote the carrying on of specified unlawful activity.'").

Because Mendoza fails to demonstrate that, in light of any new reliable evidence, "'no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt,'" he fails to demonstrate that a miscarriage of justice based on actual innocence excuses the time bar. *McQuiggin*, 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329).

Accordingly, it is **ORDERED** that Mendoza's (Doc. 1) petition for a writ of habeas corpus is **DISMISSED** as time barred. The Clerk is **DIRECTED** to enter a judgment against Mendoza and **CLOSE** this case.

### DENIAL OF CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED *IN FORMA PAUPERIS*

Because Mendoza neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**DONE AND ORDERED** in Tampa, Florida on November 5, 2025.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE